NOTE.—See the cases of *Lewis v. King*, 180 Ill. 259; *Butler v. Butler*, 161 Ill. 451, on the validity of slave marriages. See also, the case of *Lewis v. Mayo, Adm.*, reported immediately following this case.—Ed.

---

(*County Court of Cook County.*)

### John Lewis, David Lewis and Ophelia Lewis

vs.

### Simeon Mayo, Administrator of the Estate of John Reelay, alias Lewis.

(January, 1869).

1. SLAVES—VALIDITY OF MARRIAGE BETWEEN. Marriages ·of slaves, consummated during slavery in a slave state in which there is no statute declaring such marriages void, are valid for all purposes after the emancipation of such slaves.

Petition to have slave marriage declared valid and to recognize petitioners as lawful heirs of decedent. Heard before Judge Thomas B. Bradwell. The facts are stated in the opinion.

*F. W. Becker,* for petitioners.

*A. N. Waterman,* for administrator.

BRADWELL, J.:—

The deceased was a colored man. His real name was John Lewis. He was held as a slave, in Virginia, until the late war, when he ran away, came to Chicago and changed his name to Reelay. He died intestate, in Chicago, about two years ago, leaving some property.

The evidence shows, that the intestate, about twenty years ago, then being a slave in Virginia, agreed to marry the slave woman of another master. That, with the consent of their masters, a large party of slaves were called together one evening to witness the marriage—that a Methodist class-leader did pronounce them husband and wife; after which they lived together for many years as such, and had three children who are the petitioners in this cause.

The mother of these children was sold about the time of the capture of Harper's Ferry, and sent off further South, since which time she has not been heard from. I am now asked to find that these three children, are the legal heirs of said intestate, and entitled to the property of which he died possessed.

It is claimed that the father and mother at the time of the marriage were property; and, therefore, unable to contract or enter into the marriage relation.

This court, at the September Term, in 1866, in the case of Matt. C. Jones against Julius Rosenthal, Administrator, etc.,[1] examined, with some care, the authorities in regard to the validity of a slave marriage, and, as I have had no reason to change my opinion since that decision was rendered, it will be sufficient, to dispose of this case without going again into

[1] Reported herein. See also the note to same.—Ed.

the reasons given, or the authorities cited, in that case, simply to read the head-note to that opinion, which is as follows:

"Henry Jones, a negro slave, was married in Tennessee, by a justice of the peace ,to a colored woman, the slave of another master, with the consent of their masters. They had one child while in slavery, the fruit of such marriage, called Matt. C. Jones—the mother died in slavery. Jones and Matt. C. were afterward emancipated. *Held*, after the death of Henry Jones, that such marriage was not void; and that Matt. C. was the legitimate son of Henry Jones, and, as such, entitled to inherit his estate; notwithstanding the fact that his parents were slaves at the time of their marriage and his birth.

"Marriages of slaves, consummated during slavery in a slave state, where there is no statute declaring them void, are good for all purposes upon emancipation."

Mr. Clerk, let an order be entered, finding the marriage between the intestate and the said female slave valid, and the three petitioners his children, and heirs-at-law.